# Tibby's Estate (No. 1).

*Wills—Devise—Codicil—Sons—Children.*

Testator devised his real estate subject to the dower of his widow, to
his four sons for life giving each an undivided one fourth with remainder
in fee to their respective sons.   One of the sons had two sons and a daugh-
ter, the second had one son and a daughter, and the other two had each
one son and two daughters.   Subsequently testator executed a codicil in
which he stated that as his second son had died " leaving a sufficient es-
tate to his surviving children, I hereby revoke the devise made to him in
my foregoing will, and I also revoke and annul the devise therein made
to his children; and I hereby give and devise the share of my estate in-
tended (and given) in and by said will to him and his children, to my three
surviving sons, and to their children for the like estate and subject to the
same conditions as those mentioned in said will.   That is to say, to each
of my said last named three sons the one-third part of my real estate for
life, and to their respective children in fee simple at their decease, re-
spectively—subject however, to the dower of my wife." *Held*, that the
codicil revoked the devise of the remainder to the grandsons of the testa-

tor, and vested it in all of his grandchildren, children of the three sons named in the codicil.

Argued Nov. 6, 1903. Appeal, No. 168, Oct. T., 1903, by J. R. W. Tibby, from decree of O. C. Allegheny Co., April T., 1903, No. 3, awarding partition in estate of James Tibby, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Petition for partition.

In addition to the facts stated in the opinion of the Supreme Court it appeared that the land in controversy was valuable real estate situated in Pittsburg and Wilkinsburg.

The court entered a decree by which purports were awarded to decedent's granddaughters as well as to his grandsons.

*Error assigned* was the decree of the court.

. . . .

*John S. Ferguson,* with him *John S. Lambie,* for appellants.—
It is an established rule not to disturb the provisions of a will farther than is absolutely necessary for the purpose of giving effect to the codicil: Jarman on Wills, 160; Holden v. Blaney, 119 Mass. 421; Davis v. Bennet, 30 Beav. 226; Quincy v. Rogers, 63 Mass. 291; Robertson v. Powell, 2 H. & C. 762; Arnold's Est., 33 Beav. 163; William on Executors, 221; Lewis's App., 108 Pa. 133; Reichard's App., 116 Pa. 232.

A will is affected only so far as there is a repugnance between it and the codicil and the latter is not a revocation except in the exact degree in which the two are inconsistent: Whelen's Est., 175 Pa. 23; Bosley v. Wyatt, 55 U. S. 390; Tilden v. Tilden, 79 Mass. 103; Pierpont v. Patrick, 53 N. Y. 591; Hearle v. Hicks, 8 Bing. 475; Freeman v. Freeman, 5 DeG. M. & G. 704; Chapin v. Parker, 157 Mass. 63 (31 N. E. Repr. 713); Farrer v. St. Catherine's College, L. R. 16 Equity, 19.

*Andrew G. Williams* and *James G. Hayes,* with them *William J. Barton* and *John W. Thomas,* for appellees, cited: Weber's App., 17 Pa. 474; Alsop's App., 9 Pa. 374.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904:
James Tibby by his will dated March 14, 1874, devised his

real estate, subject to the dower of his widow, to his four sons for life, giving each an undivided one fourth, with remainder in fee to their respective sons. At the date of the making of the will the testator had a wife, Catherine, and four sons: John who had two sons and a daughter; James who had one son and a daughter; Matthew and William, who each had one son and two daughters. Subsequently James Tibby, one of the sons, died and thereafter, on February 3, 1879, the testator added the following codicil to his will: "I, James Tibby, do make and publish this codicil to my will above written—That is to say, my son James Tibby, having died (leaving a sufficient estate to his surviving children), I hereby revoke the devise made to him in my foregoing will, and I also revoke and annul the devise therein made to his children; and I hereby give and devise the share of my estate intended (and given) in and by said will to him (James) and his children, to my three surviving sons, John, Matthew and William, and to their children for the like estate and subject to the same conditions as those mentioned in said will—That is to say, to each of my said last named three sons the one-third part of my real estate for life, and to their respective children in fee simple at their decease, respectively; subject, however, to the dower of my wife.

"My piano, I give to my wife, for her sole use, as long as she remains my widow and unmarried.

"I revoke the appointment of executors made in the foregoing will, and I now nominate and appoint my three sons, John, Matthew and William Tibby, executors of my said will, with full power and authority in the premises. And I hereby affirm my said will of March 14, 1874, with and subject to the changes and alterations contained in this codicil, as my last will and testament."

The solution of the question involved in this case requires the construction of this will and codicil. The appellees claim, and the court below held, that the codicil revoked the devise of the remainder to the grandsons of the testator and vested it in his grandchildren, the children of his three sons, John, Matthew and William. The contention of the appellants is that the purpose and effect of the codicil were simply to eliminate James and his sons from participation under the will, and to give the remainder, after life estates to the testator's three

sons, to his grandsons and not to his grandchildren, thereby excluding his granddaughters from any interest in his real estate.

It must be conceded that the will of 1874 left no room for the application of technical rules in construing it. The intention of the testator is plainly expressed in language of unmistakable significance and hence the instrument interprets itself. The grandsons, and not the grandchildren, of the testator took the remainder in fee. The word " sons " was used to designate the devisees and the well established meaning of the word is not controlled or in any manner affected by the codicil or other parts of the will. Conceding such to be the correct interpretation of the will, did the testator enlarge the scope of his bounty and confer it on the daughters as well as on the sons of his three surviving sons? This is the single question in the case.

In the first part of the codicil the testator recites the fact that his son James had died, leaving a sufficient estate to his children and revokes and annuls the devise in the will to James " and his children," and gives their share to the testator's surviving sons and their children. The word " children " includes all the immediate offspring, male and female, of the parents, and the testator in the revoking clause employed it in the less comprehensive sense of " sons." Had he been accurate in his expression he would necessarily have used the word " sons " in referring to the devisees in the will. His inaccuracy convicts the scrivener of carelessness in the use of the term and discloses what too frequently occurs, the thoughtless use of words in a written instrument. This use of the word in this connection is the basis of the contention that it was used throughout the codicil in the restricted sense. But in the recital clause in the same connection the testator used it in its broad and generally accepted sense when he referred to James's " surviving children." His son James had but one son and one daughter and obviously both were necessarily included in the term as there used by the testator. In the concluding part of this paragraph of the codicil, immediately following the devise of the share of James and his children to the testator's three sons and their children, he adds an explanatory clause as follows: " That is to say, to each of my said last named three sons the one-third

part of my real estate for life, and to their respective children in fee simple at their decease, respectively—subject, however, to the dower of my wife." This devise is as plain as language can make it and makes the granddaughters as well as the grandsons beneficiaries of the testator's bounty unless we apply the appellants' construction of the word " children " and read it "sons " as the scrivener inadvertently used it in the revoking clause. In the explanatory clause the testator used both words, " sons " and " children." He, however, observed the distinction between them in referring to his own offspring and used " sons." As he had no daughters, "children " could have been used with like effect and would have meant the same persons. The same may be said as to the use of the word "sons " in the preceding clause wherein he also recognizes the distinction between the words. It is thus apparent that the testator knew the difference in the signification of the two words and that he employed them in this clause in their usually understood sense.

There were two purposes in the testator's mind when he executed the codicil : the revocation of the devise to James and his sons for the reason stated, and the devise of his entire real estate to his three surviving sons and their children. As observed above, such is disclosed by the language he employs in the codicil, unless, by applying a technical rule of construction, we give it a different signification. Five years had elapsed since he made his will. During that time his son had died and had left, as the testator thought, a sufficient estate for his children. Recognizing the changed condition of affairs and that ample provision had been made for the children of James, he revoked the devise of that share, thereby leaving it subject to distribution under the codicil. We must assume that he knew the value of his real estate at the dates of the will and codicil respectively. The revocation of the share given James and his sons had increased, to the extent of the value of that share, the quantum of the estate for distribution under the codicil. Excluding the children of James, the testator had four grandsons and five granddaughters. If we construe the word " children " as including both classes, the grandsons will receive about one ninetieth less under the codicil than they would have received by the terms of the will. If we give the word

" children " in the codicil the restricted meaning of " sons," the four grandsons will receive thereby an additional one fourth of the entire estate. We may reasonably assume that there was a slight increase in the value of the real estate between the dates of the respective devises, and hence the interest of the grandsons in the testator's real estate under the codicil, the granddaughters participating in the devise, would still at least equal if not exceed the interest they would have received by the provisions of the will. If, therefore, we give the word " children " in the codicil its generally accepted meaning, the grandsons will not receive less than they would have received under the will. This fact has an important bearing in ascertaining the intention of the testator. Again : ·if the object of, the codicil was simply to revoke the devise to James and his sons and to vest the interest in the testator's three surviving sons and their sons, why did it not stop when it had accomplished that purpose? and why did the testator immediately follow it with language, unless restricted, unmistakably showing his intention to convey his entire real estate ? The fact that he did not do so is persuasive that by the use of the word " children " to designate the devisees in the codicil, the testator by that instrument intended to include both sexes of his grandchildren, and to dispose of his entire real estate to them as his devisees.

The interpretation here given the codicil produces equality among the grandchildren. While the will discloses an intention on the part of the testator to deprive his granddaughters of any participation in his estate, yet we are convinced that the subsequent changes in conditions affecting his children and his own and their estates, had brought a change in his mind as to who should be the devisees of his real property. He observed, as the codicil discloses, that James's children had been amply provided for by their father and withdrew from them the interest in his estate he had given them by his will. He believed that the interest he had given his grandsons by the will was sufficient for them. He, therefore, by the codicil, while giving the grandsons the equivalent of what they would have received by the will, allowed his granddaughters to participate in the devise of his real estate. The provision of the codicil deprives the grandsons of nothing they were entitled to

under the will, and simply gives to other devisees, equally meritorious with the grandsons, an interest in the testator's estate.

The court below properly disposed of the case and therefore, the decree is affirmed.